## MATTHEWS *v.* CROSBY. {Aug. 13, 1875.

56 21
67 367

*Promissory notes—Fraud—Innocent holders.*

A made his promissory note, expressed to be for value received, whereby he promised to pay B, or bearer, forty dollars profits with interest, one year from date. As to A, the note was entirely without consideration, and was obtained from him by fraud. The plaintiff subsequently became the innocent, *bona fide* purchaser thereof before maturity. *Held*, that the instrument in the hands of the plaintiff was a valid, negotiable promissory note, and might be recovered; that the word "profits," as to the plaintiff, did not express or suggest a contingency or uncertainty,

but an absolute existing fund as the consideration of the promise, and on account of which the money was to be paid; and that the word, as inserted in the note, was not such an apparent defect or infirmity as to put the plaintiff upon inquiry.

FROM MERRIMACK CIRCUIT COURT.

ASSUMPSIT upon the common money counts. This action was sent to a referee, who reported his conclusions of fact and law as follows:

"Against the defendant's objection, the plaintiff was allowed to put in evidence two writings, both alike, upon each of which he claimed to recover $40, with interest from its date. These writings were as follows:

'GROTON, NEW HAMPSHIRE, November 21st, 1871.

'One year after date, for value received, I, the subscriber, of Groton, county of Grafton, state of New Hampshire, promise to pay Jacob B. Rand, or bearer, forty dollars, profits with interest.

P. O. Grafton, N. H. A. B. CROSBY.'

"On the above date, one M. called upon the defendant, and induced him to buy the agency of a worthless patent, and to give therefor four writings like the above. The understanding between the parties was, that at the expiration of a year M. would call upon the defendant and settle, by ascertaining the amount of profits which the defendant had realized from the patent, which amount was then to be inserted in the blank space preceding the word 'profits' in the written instrument, the words 'forty dollars' to be then erased. The defendant realized no profits, and, as to him, the writing was entirely without consideration, and obtained from him by fraud. The defendant never saw M. again. Subsequently, one Fellows purchased a peice of woodland of the plaintiff for $700, paying therefor in such instruments as the foregoing, including those which are the subject of this suit. The plaintiff, relying upon the representations of Fellows, whose reputation was fair enough then, bad as it may be now, took these papers in payment, and became the innocent *bona fide* holder thereof before their maturity. He does not remember whether he observed the word 'profits.' If he did, it did not suggest to him any suspicion of unfairness, nor did it suggest to his mind any inquiry as to its meaning. He supposed he was receiving good and valid negotiable promissory notes.

"As matter of law, I hold that these instruments, in the hands of the plaintiff, are valid, negotiable promissory notes, and may be recovered under the common money counts; that the word 'profits'— *quoad* the plaintiff—does not express or suggest a contingency or uncertainty, but, rather, an absolute existing fund, as the consideration of the promise, and on account of which the money is to be paid. The word 'profits,' as inserted in the note, was not such an apparent defect or infirmity as necessarily to raise a suspicion in the mind of the plaintiff, or to cast such a shade upon the transaction as to put him upon inquiry."

The questions of law raised by this report were transferred to this court by Foster, C. J.

*Pike & Blodgett,* for the plaintiff, cited Story on Notes, secs. 26, 51; Edwards on Bills and Notes (9th Am. ed.) 559; *Ryland* v. *Brown,* 2 Head (Tenn.) 270; *Wells* v. *Brigham,* 6 Cush. 8; *Ernst* v. *Steckman,* 74 Pa. St. 13; *Hovey* v. *Winslow,* 59 Me. 170; *Bank* v. *Barrett,* 38 Ga. 126; *Dougherty* v. *Perry,* 38 Ind. 15; *Taylor* v. *Curry,* 109 Mass. 37.

*Mugridge,* for the defendant, cited Chitty on Contracts 73; Powell on Contracts 239; *Bartlett* v. *Nottingham,* 8 N. H. 305; *Clement* v. *Carleton,* 2 N. H. 369; *Trustees* v. *Peaslee,* 15 N. H. 327.

Smith, J. The notes offered in evidence were payable at a time fixed, namely, one year after date, on no contingency or condition, but absolutely; for a sum certain, out of no special fund, but by the maker generally; and to the payee or bearer. These qualities answer the test of the negotiability of a promissory note. *Harriman* v. *Sanborn,* 43 N. H. 128; *Cota* v. *Buck,* 7 Met. 588; Chitty on Bills 132. The body of the notes contains the word "profits." But this word does not express any contingency upon which the payment of the notes depends, nor refer to any particular fund out of which they are to be paid. The word does not in any way modify the promise of the defendant. He has, for value received, promised to pay Jacob B. Rand, or bearer, forty dollars profits, with interest, one year from date. The natural and reasonable construction of the language used is, that the profits were not profits to be earned during the year or in the future, for there might be no profits earned, but were profits already accrued or agreed upon. The word refers to the consideration for which the note was given, which the maker distinctly admits in the use of the words "value received."

The defendant contends that the question is one of *latent* ambiguity, and could not be determined by the referee as a matter of law. The construction of all written instruments is matter of pure law, in all cases where the meaning and intention are by law to be collected from the instrument itself. No parol evidence is admissible to limit, extend, contradict, or in any way vary the terms used in an instrument, nor to explain any ambiguity in them which is apparent on the face of the instrument. *White* v. *Atkinson,* 4 N. H. 21; *Bartlett* v. *Nottingham,* 8 N. H. 312. Is there a latent ambiguity in these notes? "A latent ambiguity is that which seems certain, and without ambiguity for anything that appears upon the instrument, but there is some collateral matter out of the deed that breeds the ambiguity." Sugden on Vendors 101 (1st Am. ed.); *Trustees* v. *Peaslee,* 15 N. H. 327; *Miller* v. *Travers,* 8 Bing. 244. No difficulty arises as to the person to whom the defendant promised. No question is raised that the promisee, Jacob B. Rand, was described by his proper name, and that from him

the note has been transferred to the present plaintiff, who is the bearer and owner of the same. Nor is any question raised that there were two persons of that name ; so that here is no controversy as to which one was the true promisee. Nor, again, is there any ambiguity as to the subject-matter of the promise. It is a promise to pay forty dollars—not forty dollars *in* profits, nor out of profits, nor when the profits shall be earned, nor provided they shall be earned. The language used cannot be said to be strictly ungrammatical, but when interpreted properly will read something as follows: " One year after date, for value received, I promise to pay Jacob B. Rand, or bearer, forty dollars with interest, being for profits received," or, " it being the sum agreed upon as the value of profits received by me."

*Taylor* v. *Curry*, 109 Mass. 36, is a case very much in point. The note declared upon was as follows : " Twelve months after date I promise to pay to the order of Maurice Curry four hundred and one dollars for value received. On policy No. 33,386. By Stromness, Maurice Curry." It was held that the words in the body of the note, " On policy No. 33,386, by Stromness," did not express any contingency as to the payment of the notes, or refer to any fund out of which they are to be paid, but appear to refer to the consideration for which they were given.

It is further contended by the defendant, that the referee could not find, as *matter of law*, that the word " profits," as inserted in the note, was not such an apparent defect or infirmity as necessarily to raise a suspicion in the mind of the plaintiff, or to cast such a shade upon the transaction as to put him upon inquiry. It is clearly a question of law and not of fact, and is in accordance with the decisions. The authorities cited by the plaintiff seem to be quite in point. *Bank* v. *Barrett*, 38 Ga. 126 ; *Dougherty* v. *Perry*, 38 Ind. 15.

CUSHING, C. J.   The fair construction of the term " profits," in the notes in question, is, that the sum which the promisor agrees to pay is to be taken as the amount of profits which he has received on some past transaction, and is to pay to the payee of the note or his order. That being so, the admission of parol testimony, to disclose the agreement sought to be proved, could not be allowed without giving by parol testimony a meaning to the writing different from what is apparent on its face, which is inadmissible. There would be, then, nothing for a purchaser of the note to inquire about. By its fair construction, it imports a note absolutely payable, and not payable on a contingency, and was therefore a good negotiable note.

The referee also finds, as matter of fact, that there was nothing in the term " profits" having a suspicious appearance, or calculated to put the purchaser upon inquiry. This is clearly matter of fact and not matter of law; and the fact having been passed upon and found by the referee, there is nothing left for the court to consider.

The note, therefore, being on its face a good negotiable note, and there being in fact nothing about it to put the purchaser on inquiry,

and having been purchased in good faith before it became due, the plaintiff is entitled to hold it free from any equities which might exist between the original parties to the note.

LADD, J.  When the defendant signed these papers, he supposed the word " profits " meant profits to be realized from the worthless patent during the year the notes had to run ; and such was the contract which he in fact made.  But the papers were cunningly drawn, in such way as to carry one idea to the mind of the defendant, who knew the understanding upon which they were given, and another to the mind of one who had no such knowledge, and was also ignorant of the transaction out of which they sprang.  It was the device of a rogue to overreach and defraud the unwary.  The referee has found that "the word ' profits,' as inserted in the note, was not such an apparent defect or infirmity as necessarily to raise a suspicion in the mind of the plaintiff, or to cast such a shade upon the transaction as to put him upon inquiry."  He also finds that the plaintiff took the notes in payment for land, and became the innocent *bona fide* holder of them before their maturity.  These findings obviously leave no question but the legal construction of the instruments, which has been considered by my brethren ; and I agree with them, that, as the papers stand, they show an unqualified promise to pay, which gives them the legal character of promissory notes, and that the word " profits " imports rather the consideration upon which they were given, than a contingent fund, or any fund, out of which they were to be paid.  There must be

*Judgment on the report for the plaintiff.*